## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

---

ASH Group of Florida Inc.,
Just Brands USA Inc., FMMD
Network, LLC, SSGI Financial
Services, Inc. and Mitha Management
Group LLC by Hassan Rakine, acting
as their Sellers' Representative,

                Plaintiffs,

v.

Flora Growth Corp. and
Flora Growth U.S. Holdings Corp.,

                Defendants.

Civil No. _____

**COMPLAINT**

---

For their complaint against Flora Growth Corp. and Flora Growth U.S. Holdings Corp., Hassan Rakine, acting as Sellers' Representative on behalf of ASH Group of Florida Inc., Just Brands USA Inc., FMMD Network, LLC, SSGI Financial Services, Inc., Mitha Management Group LLC (collectively "Plaintiffs") states and alleges as follows:

## <u>INTRODUCTION</u>

1.     This case concerns the sale of the successful JustCBD business to Flora Growth Corp. ("FLGC"), a publicly traded corporation, and its subsidiary Flora Growth U.S. Holdings Corp. (both collectively "Flora Growth"), for $63.5 million pursuant to a Securities Purchase Agreement dated February 24, 2022. At the time, the

JustCBD business focused on the manufacture of consumable products derived from hemp that were sold in stores across the United Stated, Europe and South America.

2.      Flora Growth agreed to pay $63.5 million to purchase the JustCBD business that was developed, built, owned and operated by the Plaintiffs.  Under the Purchase Agreement, the parties agreed that Flora Growth would pay the purchase price in a combination of $16 million in cash, and $47.5 million in newly issued shares of FLGC common stock.  The number of shares to be issued as consideration in the transaction were based on a $5.00 per share valuation, but subject to an adjustment mechanism in the event the value of the shares for a two-year period fell below that $5.00 per share price.   The adjustment mechanism required FLGC to issue additional shares of FLGC common stock to the Plaintiffs if the share price did not exceed the $5.00 per share price goal or if FLGC stock was diluted.  The mechanism was intended to make the Plaintiffs whole for the purchase price agreed to by the parties in the sale of the JustCBD business.  Since the closing, the price of FLGC stock has declined steadily and FLGC has undertaken multiple dilutive transactions that that have further diminished the value of FLGC's common stock to all shareholders, and in particular to the significant shares held by the Plaintiffs.

3.      FLGC failed to "promptly" issue additional shares in accordance with a specific formula set forth in the Securities Purchase Agreement after the two-year anniversary of the closing, which occurred on February 24, 2024.  In accordance with that formula, Flora Growth was required to transfer 182,889.25 additional shares of

FLGC common stock and pay more than $38 million to Plaintiffs to complete the acquisition of JustCBD.

4.     On March 27, 2024, Hassan Rakine, as the Plaintiffs' Representative, notified FLGC,  its Chief Executive Officer and each of its board members—Clifford Starke, Kevin Taylor and Edward Woo—in writing of FLGC's obligations under the Securities Purchase Agreement to pay the additional shares and cash consideration required pursuant to the adjustment mechanism.  FLGC did not respond to that notice or pay the additional consideration.

5.     Instead, since receiving the March 27, 2024 demand letter from Plaintiffs, FLGC has completed multiple additional transactions and made its annual 10-K filing, all without disclosing its significant liabilities to the Plaintiffs.  FLGC's liability to Plaintiffs exceeds its current market capitalization and is indisputably material information to any actual or potential investor.  Despite the materiality of this information, there was no disclosure in FLGC's March 28, 2024 10-K filing, there was no disclosure in a prospectus filed on April 4, 2024 in connection with the issuance of new FLGC shares, and there has been no other disclosure to investors of this substantial liability.  There was also no disclosure in connection with a recent transaction in which FLGC acquired another company in exchange for shares of FLGC common stock.

6.     The failure by FLGC and its officers and directors to disclose material information about FLGC stock is directly harming Plaintiffs, both as owners of FLGC stock, and also by causing further dilution of the value of their shares by issuing shares to unsuspecting investors and by preventing Plaintiffs from selling their shares without a

risk that doing so will constitute insider trading based on the undisclosed material information.

7.      In addition, a significant portion of the shares issued to Plaintiffs at the closing were held in escrow pending their post-closing indemnification obligations. Those escrow obligations expired in accordance with their terms well over eight months earlier, yet the shares were not released from escrow because such release required the affirmative acknowledgement of both the Plaintiffs and the Flora Growth.  On March 11, 2024, plaintiffs provided notice to Flora Growth that it requested such shares be released from escrow.  Flora Growth did not respond to the request to release the shares from escrow.

8.      Flora Growth refuses to comply with its obligations under the Securities Purchase Agreement and Escrow Agreement.  The Plaintiffs have commenced this action to compel FLGC to issue the additional shares, release the escrowed shares, and pay the additional cash consideration it owes to the plaintiffs; failing that, plaintiffs seek to compel Flora Growth to return ownership of JustCBD to the plaintiffs.  Plaintiffs also seek to prohibit Flora Growth from taking additional actions that cause additional dilution to the outstanding share of FLGC common stock and to cease and desist from new issuances of such shares at prices that further diminish the value of those shares held by plaintiffs (and which are still held in escrow and therefore unable to realize any cash value).

## PARTIES

9.     Plaintiff ASH Group of Florida Inc. ("ASH") is a Florida corporation with its principal place of business located in Florida.

10.     Plaintiff Just Brands USA Inc. ("Just Brands USA") is a Florida corporation with its principal place of business located in Florida.

11.     Plaintiff FMMD Network, LLC ("FMMD") is a Florida limited liability company.

12.     Plaintiff SSGI Financial Services, Inc. ("SSGI") is a Florida corporation.

13.     Plaintiff Mitha Management Group LLC is a Florida limited liability company.

14.     ASH, Just Brands USA, FMMD, SSGI and Mitha are collectively referred to as Plaintiffs.

15.     Plaintiff Hassan Rakine ("Rakine") is a Florida resident.  He is the duly appointed successor Sellers' Representative pursuant to the Purchase Agreement.  He has been authorized to act on behalf of all of the seller Plaintiffs in commencing and prosecuting any action, including this action, relating to the transactions at issue here. The Plaintiffs irrevocably appointed Hussein Rakine as the Sellers' Representative and granted him broad power of attorney, including to bring legal actions, arising out of the transactions contemplated under the Securities Purchase Agreement.  Pursuant to Section 10.5 of the Securities Purchase Agreement, Hassan Rakine was appointed as the successor Sellers' Representative and now holds all power to commence this action on behalf of Plaintiffs.

16.    Defendant Flora Growth Corp. ("FLGC") is an Ontario corporation that is publicly traded on the Nasdaq stock exchange under the ticker symbol FLGC.  According to its 10-K, FLGC's principal place of business is located in Florida.  FLGC also has significant operations in Europe.

17.    Defendant Flora Growth U.S. Holdings Corp. is a Delaware corporation that is registered as a Delaware resident with the Delaware Secretary of State. Accordingly, Flora Growth U.S. Holdings Corp. is a citizen of Delaware.  It is a wholly owned subsidiary of FLGC.

18.    FLGC and Flora Growth U.S. Holdings Corp. are collectively referred to as Defendants or Flora Growth.

## JURISDICTION, VENUE AND CHOICE OF LAW.

19.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it includes an action that arises under the laws of the United States in that it alleges a violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 and pursuant to 28 U.S.C. § 1367, which authorizes this Court to exercise supplemental jurisdiction over claims that involve the same case or controversy.  Plaintiffs' state  law claims involve the same case or controversy as their federal claims.

20.    Personal jurisdiction and venue are appropriate because the Agreement provides that the each of the Parties "expressly and irrevocably consents and submits to the exclusive jurisdiction of each state and federal court located in New York, New York, (and each appellate court located in the State of New York) in connection with any such

Proceeding" concerning any legal action relating to the Agreement or the enforcement of any provision of the Agreement.

21.     Section 11.9 of the Securities Purchase Agreement provides that disputes will be "governed solely by the internal laws of the State of Delaware, without regard to the conflict-of-law principles thereof."

## FACTUAL BACKGROUND

**I.     JustCBD rapidly developed into a successful business selling hemp-derived consumable products.**

22.     Prior to February 24, 2022, ASH, Just Brands USA, SSGI and FMMD owned 100 percent of the issued and outstanding equity interests in Just Brands LLC ("Just Brands"), a Florida limited liability company.

23.     Prior to February 24, 2022, ASH owned 75 percent and Mitha owned 25 percent of the issued and outstanding equity interests in High Roller Private Label LLC ("High Roller"), a Delaware limited liability company.

24.     Just Brands and High Roller collectively owned the JustCBD brand and associated operations.

25.     Since its formation in 2017, JustCBD had quickly grown to be a market leader in the market for consumable products derived from hemp.  JustCBD manufactured hundreds of hemp-derived products and sold such products to stores across the United States, Europe and South America.

26.     Hussein Rakine, then the CEO of JustCBD, was named to *Forbes* magazine's 30 under 30 list for retail and e-commerce based on the rapid growth and success of the JustCBD brand.

## II.     Flora Growth acquired Just Brands and High Roller pursuant to a Securities Purchase Agreement effective February 24, 2022.

27.     Effective February 24, 2022, Flora Growth U.S. Holdings acquired JustCBD by purchasing 100 percent of the issued and outstanding equity interests in both High Roller and Just Brands from ASH, Just Brands USA, SSGI, FMMD and Mitha pursuant to a Purchase Agreement.  A true and correct copy of the Purchase Agreement available through the SEC's EDGAR service is attached hereto as Exhibit 1.

28.     Pursuant to the Purchase Agreement, FLGC agreed to pay $16 million in cash consideration (subject to adjustment) and to issue 9.5 million shares of FLGC common stock, subject to adjustment.  In addition, Flora Growth agreed to provide additional shares of FLGC common stock to account for the failure of the publicly-traded price of the stock to increase above $5.00 or for any subsequent actions that were dilutive.

29.     On February 24, 2022, the day the transaction closed, FLGC stock closed at or about $1.85 per share.

30.     The parties anticipated that the share price for FLGC stock would grow to and eventually exceed $5.00 per share.  At that expected valuation, the 9.5 million shares of share consideration provided for under the Purchase Agreement would be worth $47,500,000.

31.    The Purchase Agreement included an Additional Shares provision (Section 2.7 of the Purchase Agreement) that was intended to ensure that the Plaintiffs received the full share consideration of $47,500,000 contemplated by the parties, which would assure Plaintiffs the full value of the $63.5 million purchase price.

32.    In a Form 6-K that was filed with the SEC by FLGC on February 28, 2022, FLGC explained this intention as follows:

> The Agreement provides that if at any time during the 24 months following the Closing (the "Reference Period"), the five-day volume weighted average price ("VWAP") per share of Flora's common shares as quoted on the Nasdaq Capital Market fails to equal or exceed the Share Price, then promptly following the Reference Period, Flora shall issue a number of additional Flora common shares (the "Additional Shares", together with the Flora Shares, the "Share Consideration") to Sellers so that the Share Consideration has an aggregate value of $47,500,000, less the value of any Escrow Shares relinquished or sold out of the share escrow described in the preceding paragraph, determined by a formula set forth in the Agreement.

33.    The mechanism the parties agreed to in order to give effect to their intention of assuring at least $47,500,000 in share consideration was that FLGC was obligated to provide the Plaintiffs with Additional Shares of FLGC stock if "the five-day volume weighted average price ('VWAP') per share of Parent Common Stock as quoted on the NASDAQ Capital Market fails to equal or exceed the Share Price," which was set at $5.00.

34.    The number of Additional Shares that would need to be provided as consideration would be determined according to a formula set forth in section 2.7(a), which provides as follows:

> (a) If at any time during the twenty-four (24) month period following the Closing Date (the "**Reference Period**"), the five-day volume weighted

average price ("**VWAP**") per share of Parent Common Stock as quoted on the NASDAQ Capital Market fails to equal or exceed the Share Price, then promptly following the twenty-four (24) month anniversary of the Closing Date, Parent shall issue Parent Common Stock (such shares, or any shares issued in accordance with Section 2.7(b), "**Additional Shares**") to Sellers in an aggregate amount equal to the difference between:

> (i) an amount equal to (A) (x) $47,500,000, less (y) the product of the total number of Relinquished Shares multiplied by the Share Price, less (z) the product of the total number of any Delivered Escrow Shares multiplied by the greater of (I) the volume-weighted sales price for all Delivered Escrow Shares sold during the Reference Period and (II) the highest five-day VWAP per share of Parent Common Stock as quoted on the NASDAQ Capital Market between the Closing Date and the date of the sale of such Delivered Escrow Shares, divided by (B) the highest five-day VWAP at any time during the Reference Period; and

> (ii) an amount equal to (A) 9,500,000 less (B) the total number of (x) Relinquished Shares and (y) Delivered Escrow Shares.

35.    In addition, the Additional Shares provision of the Securities Purchase Agreement includes additional protection for the Plaintiffs from dilution. Specifically, Section 2.7(e) of the Securities Purchase Agreement provides as follows:

> In the event of changes in the outstanding Parent Common Stock or in the capital structure of Parent by reason of any stock dividend, stock split, reverse stock split, an extraordinary corporate transaction such as any recapitalization, reorganization, merger, consolidation, combination, exchange, or other relevant change in capitalization occurring after the Closing Date, the number of Additional Shares (and the associated calculation of number of Additional Shares) deliverable pursuant to this Section 2.7 will be equitably adjusted as to the number (and price calculation) or of Additional Shares to the extent necessary to preserve the economic intent of the Parties.

36.    The Purchase Agreement also included an escrow provision, which was meant to protect Flora Growth from liability for claims asserted by third parties. Of the 9.5 million shares that Flora Growth was required to provide at closing, 3,166,667 shares

were placed in an escrow account pursuant to a Share Escrow Agreement that was attached as an exhibit and made a part of the Securities Purchase Agreement. The Escrow Agreement is attached hereto as Exhibit 2.

37.    The Escrow Shares were held in order to satisfy potential obligations of the Plaintiffs that could arise under Sections 2.5 and 9.2(a) of the Securities Purchase Agreement, which generally addressed potential revenue shortfalls, indemnification claims, or liabilities and defense costs for certain lawsuits pending at the time of closing.

38.    In a Form 6-K filed with the SEC by FLGC on February 28, 2022, FLGC explained this intention as follows:

> Similarly, 3,166,667 of the Flora Shares (the "Escrow Shares") have been deposited into a share escrow account to satisfy (i) shortfalls, if any, between the Acquired Companies' actual audited 2021 revenue/EBITDA vs. targeted revenue/EBITDA, (ii) indemnification claims, if any, arising from Sellers' breach of representations and warranties for a period of 15 months following the Closing and (iii) all expenses of defending and all settlements and/or final judgments with respect to, litigation relating back to the period prior to the Closing.

39.    After the transaction closed, FLGC issued a press release that touted the success of JustCBD. FLGC explained that JustCBD had generated $28 million in revenue and $7 million in EBITDA in the 2020 fiscal year and had an "established CPG brand with a portfolio of over 300 products and a seamless omnichannel approach that includes a direct-to-consumer business with over 300,000 customers and a network of over 14,000 stores across the United States and internationally."

40.     FLGC represented that JustCBD was expected to accelerate FLGC's growth and provide immediate contributions to revenue and earnings, as well as to open opportunities for international expansion.

**IV.     FLGC's share price has consistently fallen since the transaction closed, which has led to multiple dilutive offerings and a 20 to 1 reverse stock split to prop up the price of FLGC's shares.**

41.     As expected, JustCBD has been a significant revenue boost for FLGC since the transaction closed.  Unfortunately, the success of JustCBD has not been sufficient to overcome myriad other problems with FLGC's business.

42.     Instead of increasing to $5.00 per share or more as the parties expected, FLGC stock has consistently fallen since the transaction closed.  FLGC stock never came close to the $5.00 per share target price that the parties agreed to.

43.     On December 8, 2022, FLGC issued 12,500,000 additional shares of stock at $.40 per share as part of a registered direct offering along with warrants for another 12,500,000 shares of stock with $.40 strike price and warrants for 500,000 shares with $.44 strike price.  The impact of issuing all of these shares and warrants was to significantly dilute FLGC stock and the ownership interest that Plaintiffs received in FLGC pursuant to the Securities Purchase Agreement.

44.     By June 2023, the share price for FLGC stock had continued to fall precipitously.  Effective June 9, 2023, there was a reverse stock split for FLGC stock to prop up the share price.  The reverse stock split was completed using a 1:20 ratio whereby every 20 shares of existing FLGC stock was converted into a single share.

45.    Pursuant to Section 2.7(e) of the Purchase Agreement, the impact of a stock split must be equitably adjusted when determining the number of Additional Shares that are due to Plaintiffs.  Accordingly, the pre-reverse stock split share numbers and prices should be converted into their equivalent after adjusting for the stock split.

46.    Adjusting for the stock split, the initial share consideration of 9.5 million shares is now 475,000 in post-reverse split shares and the initial target share price of $5.00 is now $100.00 for post-reverse split shares.

47.    Likewise, the following table adjusts the numbers from the December 8, 2022 Registered Direct Offering to account for the split:

|  | Pre-Reverse Split | Post-Reverse Split |
|---|---|---|
| Shares of Parent Common Stock | 12,500,000 | 625,000 |
| Share Price | $.40 | $8 |
| Warrants | 12,500,000 | 625,000 |
| Strike Price | $.40 | $8 |
| Additional warrants | 500,000 | 25,000 |
| Strike Price | $.44 | $8.80 |

48.    On September 20, 2023, FLGC issued additional shares as part of another registered direct offering (all post-reverse split).  FLGC issued 1,369,000 shares at $2 per share along with warrants for 1,369,000 shares of Parent Common stock with strike price

of $2.50 and warrants for 54,760 shares of Parent Common stock with a strike price of $2.39.

49.     FLGC stock has continued to decline in value.  Today, it is trading at less than $2.00 per share despite the reverse stock split that was intended to prop up the value of the stock.  That is more than $98 below the adjusted target price for the stock even without accounting for the significant dilution.

**V.    FLGC is required to provide additional shares and cash compensation because the share price never hit the target price.**

50.     Because the stock price never hit the target share price, Plaintiffs are entitled to additional shares, which must be issued pursuant to Section 2.7 of the Purchase Agreement in order to meet the anticipated $47,500,000 in share consideration required under the Securities Purchase Agreement.

51.     FLGC was required to transfer additional shares of FLGC common stock on February 24, 2024 to the Plaintiffs pursuant to Section 2.7 if at any point the five-day volume weighted average price ("VWAP") per share was below $100 (adjusting for the reverse stock split).  The highest five-day VWAP at any time during the Reference Period was $43.60 (adjusting for the stock split).  Accordingly, FLGC's obligation to transfer additional shares under section 2.7 was indisputably triggered.

52.     In addition, because FLGC completed multiple dilutive transactions, additional share consideration must be provided to account for those transactions under section 2.7(e) of the Securities Purchase Agreement.

53.     If the number of Additional Shares required to be paid exceeds the Parent Share Cap set forth in the Securities Purchase Agreement, FLGC must make a cash payment equal to the number of Excess Shares above the cap multiplied by the "highest 5-day VWAP during the Reference Period."

54.     The term "Parent Share Cap" is defined in the Securities Purchase Agreement to mean "absent stockholder approval under Nasdaq Marketplace Rule 5635, 13,157,785 shares of Parent Common Stock, constituting 19.9% of the total number of shares of Parent Common Stock that are issued and outstanding immediately prior to the Closing Date."  FLGC did not obtain the requisite shareholder approval so its ability to provide additional shares is limited by the Parent Share Cap.

55.     Because FLGC provided 9.5 million shares in initial share consideration, and adjusting for the reverse stock split, the maximum additional shares that FLGC could issue was 3,657,785.  Adjusting for the reverse stock split, the maximum shares FLGC can issue is 182,889.25.

56.     The number of shares due pursuant to section 2.7(a) of the Securities Purchase Agreement far exceeds the 182,889.25 shares that FLGC can issue. Accordingly, pursuant to Section 2.7(d), Plaintiffs are also entitled to a substantial cash payment.

57.     In addition, based on the dilutive actions taken by FLGC, additional shares are also required.

58.     On March 27, 2024, Hassan Rakine, as Sellers' Representative acting on behalf of ASH, Just Brands USA, FMMD, SSGI and Mitha, sent a demand letter to

FLGC concerning the Additional Shares and cash that FLGC is required to transfer to Plaintiffs.  A true and correct copy of that demand letter, which sought 182,889.25 shares of FLGC common stock and 38,305,096.60 is attached hereto as Exhibit 3.

59.    On information and belief, FLGC has issued additional shares of stock, which is further dilutive and will also need to be addressed.  This additional issuance of stock will increase the total amount that FLGC owes to Plaintiffs.

60.    FLGC has not responded to Rakine's demand letter and has not paid any of the additional consideration owed.

**V.    Flora Growth U.S. Holdings Corp. refuses to permit the escrowed shares of stock to be released to ASH as required by the Securities Purchase Agreement.**

61.    Initially, 3,166,667 shares out of the 9.5 million shares that constitute share consideration of the transaction were placed in escrow.  Following the reverse stock split that became effective on June 9, 2023, the total number of escrowed shares was 158,333.35.

62.    FLGC previously agreed to release escrowed shares to FMMD, SSGI and Just Brands USA.

63.    FLGC, however, refuses to allow the release of the remaining 118,750 shares still held in escrow, which are owed to ASH.

64.    On March 4, 2024, Hassan Rakine, as the successor Sellers' Representative, sent a notice requesting the release of the escrowed shares.  A true and correct copy of that notice is attached hereto as Exhibit 4.

65.     FLGC did not respond to that request and did not consent to the release of those shares.  As a result, the shares have not been released as required under the Securities Purchase Agreement and Escrow Agreement.

66.     There is no basis for FLGC's refusal to approve the release of the escrowed shares.

67.     None of the circumstances described under section 2.5 or 9.2(a) of the Securities Purchase Agreement that could have triggered an obligation for Plaintiffs to make additional payments ever occurred.  Accordingly, Plaintiffs are entitled to the release of all of the shares that were placed in escrow.

**VI.     FLGC has not disclosed its liability to Plaintiffs, which is material, non-public information.**

68.     FLGC has not disclosed its liability to Plaintiffs or the claims that Plaintiffs are asserting in this action.

69.     Although FLGC had already received both the March 4, 2024 and March 28, 2024 demand letters from Rakine, and therefore was indisputably aware that it faces liabilities in excess of $38 million, FLGC did not disclose the claims, the demand letters, or its defaults under the Securities Purchase Agreement and Escrow Agreement.

70.     Since receiving those demand letters, FLGC has made the following filings without any disclosure of this significant, material information.  In particular, FLGC did not disclose the information in:

a.  Its March 28, 2024 10-K Annual Report;

b.  A prospectus issued on April 4, 2024 in connection with a new offering of

1.7 million shares of FLGC common stock; and

c.  8-K reports filed on April 5, April 8, April 19 and April 23.

71.    These are just some examples that illustrate FLGC's failure to disclose

material information.

72.    The issuance of additional securities, which were issued after failing to

disclose material information, will dilute the Plaintiffs' ownership of FLGC stock.

73.    The failure to disclose material information about these claims is also

preventing Plaintiffs from selling their own FLGC stock because doing so would likely

violate federal laws forbidding insider trading.

**COUNT I**

**Violation of Section 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 Against FLGC and Flora
Growth**

74.    Plaintiffs restate and incorporate by reference all preceding allegations as

though fully set forth herein.

75.    Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),

and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 prohibit the use of any

manipulative or deceptive device or contrivance in connection with the purchase or sale

of securities.

76.    The Securities Purchase Agreement constituted the purchase or sale of

securities under the act because shares of common stock in FLGC were exchanged (along

with cash consideration) for equity interests in Just Brands and High Roller.

77.     FLGC and Flora Growth U.S. Holdings Corp. each promised, in connection with the February 24, 2022 Securities Purchase Agreement, to ensure the value of the shares of FLGC common stock provided in exchange for Just Brands and High Roller by agreeing to provide additional share consideration as set forth in the Securities Purchase Agreement if the target share price was not achieved and to provide additional share consideration to compensate Plaintiffs for any dilution in the value of FLGC shares.

78.     Section 2.7 of the Securities Purchase Agreement contained affirmative statements of the promises by FLCG and Flora Growth U.S. Holdings Corp., which promised that Plaintiffs would receive the full value of the agreed share consideration, even if the price of FLGC common stock did not hit the agreed share price target.

79.     Plaintiffs reasonably relied on those promises in agreeing to the transaction. Plaintiffs would not have agreed proceed with the transaction without the assurances concerning the value of the share consideration and the additional shares that would be provided if shares did not hold their value.  Indeed, the additional share provision was the subject of extensive negotiations and was a critical aspect of the transaction.  If not for the inclusion of the promises reflected in Section 2.7 of the Securities Purchase Agreement, Plaintiffs would not have agreed to the transaction.

80.     At the time that FLGC and Flora Growth U.S. Holdings Corp. made the promises to provide additional share consideration to guarantee the value to the Plaintiffs of the share consideration they received, they knew that they did not intend to provide the additional share consideration.  After completing the transaction, within months, FLGC announced a new registered direct offering in which FLGC issued 12,500,000 additional

shares, which significantly diluted the stock, along with significant additional warrants. In its October 5, 2022 prospectus in connection with that transaction, FLGC did not disclose its liability to Plaintiffs for additional share consideration. That failure to disclose the liability is indicative of FLGC's intent not to provide the additional share consideration, which it had promised in order to assure Plaintiffs that they would receive the full value of the share consideration as part of the transaction.

81.     Plaintiffs have been harmed significantly by the failure to provide the additional share consideration as agreed under the Securities Purchase Agreement.

82.     Plaintiffs have also been harmed by additional violations of Section 10(b) and Rule 10b-5, whereby FLGC has sold additional shares of FLGC common stock without disclosing to actual and potential buyers its liability to Plaintiffs.

83.     On March 27, 2024, Hassan Rakine sent a notice to FLGC and its Chief Executive Officer and Board Members—Clifford Stark, Kevin Taylor and Ed Woo—informing and reminding them of FLGC's obligation to provide the additional share consideration.

84.     After receiving that letter on March 27, 2024, FLGC nevertheless issued 1,700,000 additional shares of FLGC common stock without disclosing this material information, which included a liability of more than $38 million. There was no mention of this liability in the prospectus issued in connection with that sale of stock.

85.     The 1,700,000 offering constituted a sale of securities that was completed by April 8, 2024.

86.     FLGC would not have been able to sell an additional 1,700,000 shares and dilute Plaintiffs' interests in existing FLGC stock had FLGC disclosed this liability.

87.     In addition, FLGC recently completed the acquisition of another company, TruHC Pharma GmbH, which was acquired in exchange for FLGC common stock equaling 19.99 percent of the outstanding shares of FLGC stock.  On information and belief, FLGC did not fully disclose its liabilities  and would not have been able to complete that transaction if it had made such a disclosure.

88.     Plaintiffs are entitled to damages in an amount to be determined at trial that is reasonably expected to far exceed $75,000.

## COUNT II
## Breach of Contract Against FLGC

89.     Plaintiffs restate and incorporate by reference all preceding allegations as though fully set forth herein.

90.     Through the above-described actions and omissions, FLGC breached the Securities Purchase Agreement.

91.     Pursuant to section 2.7 of the Securities Purchase Agreement, FLGC is required to provide 182,889.2 additional shares more than $38 million in additional cash consideration to Plaintiffs.

92.     FLGC refuses to respond to a demand seeking payment of the additional shares and cash consideration under the Securities Purchase Agreement.

93.     Plaintiffs are entitled to specific performance of the terms of the Securities Purchase Agreement.

94.    Plaintiffs are also entitled to any other equitable relief, including but not limited to the return of the transferred equity in Just Brands and High Roller.

95.    Plaintiffs are entitled to damages on behalf of Plaintiffs in an amount to be determined at trial that is reasonably expected to far exceed $75,000.

96.    Plaintiffs are entitled to attorneys' fees and costs incurred in bringing this action to enforce the terms of the Securities Purchase Agreement.

<u>**COUNT III**</u>
**Breach of Contract Against Flora Growth U.S. Holdings Corp.**

97.    Plaintiffs restate and incorporate by reference all preceding allegations as though fully set forth herein.

98.    Through the above-described actions and omissions, Flora Growth U.S. Holdings Corp. breached the Securities Purchase Agreement and Escrow Agreement, including by refusing to release the escrowed shares of FLGC common stock to Plaintiffs.

99.    Plaintiffs are entitled to specific performance of the Escrow Agreement, including the release of all shares of FLGC stock that are held in escrow.

100.   Plaintiffs are entitled to attorneys' fees and costs incurred in bringing this action to enforce the terms of the Securities Purchase Agreement and Escrow Agreement.

<u>**COUNT IV**</u>
**Breach of the Covenant of Good Faith and Fair Dealing Against FLGC and
Flora Growth**

101.    Plaintiffs restate and incorporate by reference all preceding allegations as
though fully set forth herein.

102.    A covenant of good faith and fair dealing is implied by law in every
agreement.  It requires that a party will do anything to injure the right of another party to
receive the benefits of the bargain.

103.    Through the above-described actions and omissions, FLGC breached the
implied covenant of good faith and fair dealing implied under the Securities Purchase
Agreement.

104.    Through the above-described actions and omissions, Flora Growth U.S.
Holdings Corp. breached the implied covenant of good faith and fair dealing implied
under the Securities Purchase Agreement and Escrow Agreement.

105.    Plaintiffs are entitled to specific performance of the terms of the Securities
Purchase Agreement and Escrow Agreement.

106.    Plaintiffs are also entitled to any other equitable relief, including but not
limited to the return of the transferred equity in Just Brands and High Roller.

107.    Plaintiffs are entitled to damages on behalf of Plaintiffs in an amount to be
determined at trial that is reasonably expected to far exceed $75,000.

108.    Plaintiffs are entitled to attorneys' fees and costs incurred in bringing this
action to enforce the terms of the Securities Purchase Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment on their Complaint as follows:

1.    Awarding Plaintiffs' actual damages in a specific amount to be proven at trial against Defendants jointly and severally in an amount reasonably expected to exceed $75,000;

2.    Ordering specific performance of the Securities Purchase Agreement and Escrow Agreement;

3.    Awarding equitable relief, including but not limited to the return of the transferred equity in Just Brands and High Roller;

4.    Awarding costs, disbursements, prejudgment interest, attorneys' fees, and expenses as allowed by law; and

5.    Awarding other just and equitable relief the Court finds appropriate.

**ANTHONY OSTLUND LOUWAGIE
DRESSEN & BOYLAN P.A.**

Dated:  April 30, 2024

By:  *s/ Joseph R. Richie*
    Joseph W. Anthony (Minnesota
    #0002872, *pro hac vice* forthcoming)
    Daniel Hall (Minnesota #0392757, *pro
    hac vice* forthcoming)
    Joseph R. Richie (SDNY #JR1218)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  (612) 349-6969
janthony@anthonyostlund.com
dhall@anthonyostlund.com
jrichie@anthonyostlund.com

**ATTORNEYS FOR HASSAN RAKINE,
ACTING AS SELLERS'
REPRESENTATIVE ON BEHALF OF
ASH GROUP OF FLORIDA INC.,
JUST BRANDS USA INC.,
FMMD NETWORK, LLC,
SSGI FINANCIAL SERVICES, INC. AND
MITHA MANAGEMENT GROUP, INC.**